UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| KRISTOPHER GORDON,<br><br>                    Plaintiff,<br><br>          v.<br><br>ROBERT D. SZNEWAJS, HALLE J.<br>BENETT, JOHAN SCHNEL, JEFFREY<br>KARISH, JOHN GROSVENOR,<br>RICHARD J. LASHLEY, and<br>DOUGLAS H. BOWERS,<br><br>                    Defendants,<br><br>and<br><br>BANC OF CALIFORNIA, INC.,<br><br>                    Nominal Defendant. | Case No.: SACV 17-01678-CJC(DFMx)<br><br><br><br>ORDER GRANTING DEFENDANT<br>BANC OF CALIFORNIA'S MOTION<br>TO DISMISS WITH LEAVE TO<br>AMEND AND DENYING OTHER<br>PENDING MOTIONS AS MOOT |

# I.  INTRODUCTION

On September 26, 2017, Plaintiff Kristopher Gordon filed this shareholder derivative action, on behalf of nominal Defendant Banc of California ("Banc"), for breach of fiduciary duty against Defendants Robert D. Sznewajs, Halle J. Benett, Jonah Schnel, and Jeffrey Karish.  (Dkt. 1 [Complaint].)  Defendants filed a motion to dismiss the Complaint, (Dkt. 31), and thereafter the parties stipulated to allow Plaintiff to file an amended complaint in lieu of the Court ruling on the motion to dismiss, (Dkts. 38, 39).  On February 6, 2018, Plaintiff filed the First Amended Complaint ("FAC"), asserting three causes of action for breach of fiduciary duty and gross negligence.  (Dkt. 41 [FAC].)  Plaintiff names all of the same Defendants and three additional Defendants: John Grosvenor, Richard J. Lashley, and Douglas H. Bowers (together, "Individual Defendants").

Before the Court is Banc's motion to dismiss Plaintiff's FAC.  (Dkt. 55 [hereinafter "Mot."].)  Also before the Court are the Individual Defendants' motions to dismiss, which assert alternative grounds to dismiss the FAC, (Dkts. 56, 60), as well as a motion to strike certain allegations in the FAC, (Dkt. 58).  For the following reasons, Banc's motion is GRANTED, and the other pending motions are DENIED as moot.[1]

# II.  BACKGROUND

Plaintiff is a current shareholder of Banc.  (FAC ¶ 20.)  Banc is a Maryland corporation with its principal place of business in Santa Ana, California.  (*Id*. ¶ 21.)  Banc had nine directors ("the Directors" or "the Board") when Plaintiff filed this action.  (*Id*. ¶

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for June 18, 2018, at 1:30 p.m. is hereby vacated and off calendar.  (*Id*. ¶

145.)  Plaintiff named six of the Directors as Individual Defendants: (1) Robert D. Sznewajs, a director since 2013 and Chair of the Board of Directors since January 2017, (*id*. ¶ 22), (2), Halle J. Benett, a director since 2013, (*id*. ¶ 23), (3) Jonah Schnel, a director since 2013, (*id*. ¶ 24), (4) Jeffrey Karish, a director since 2011, (*id*. ¶ 25), (5) Richard J. Lashley, a director since February 2017, (*id*. ¶ 26), and (6) Douglas H. Bowers, a director and CEO since May 2017, (*id*. ¶ 27).  John Grosvenor has been Banc's General Counsel and Corporate Secretary since August 2012.[2]  (*Id*. ¶ 28.)  Three of Banc's current Directors are not named as defendants in this action–Kirk Wycoff, Mary Curran, and Bonnie G. Hill.  (*Id*. ¶ 145.)

On October 18, 2016, *SeekingAlpha*.com published a blog post written by an anonymous blogger entitled "BANC: Extensive Ties To Notorious Fraudster Jason Galanis Make Shares Un-Investable," ("the Aurelius Blog").  (*Id*. ¶ 43; Dkt. 55-3.)[3]  The "opinion" piece alleged a web of relationships between Galanis, Banc's then-CEO Steven Sugarman, and Banc's then-Lead Independent Director Chad Brownstein.  (FAC ¶¶ 43–54.)  The blog post also referred to Schnel, Karish, Benett, and Sznewajs.  (*Id*. ¶ 63.)

Later that day, Banc issued a press release in response to the Aurelius Blog ("October 2016 Press Release").  (*Id*. ¶ 56; Dkt. 55-4.)  The October 2016 Press Release stated, in relevant part:

---

[2]  The Court hereinafter will refer to the Individual Defendants by their surnames, e.g., "Karish."

[3]  The Court GRANTS Banc's request for incorporation by reference and judicial notice.  (Dkt. 55-1.) Plaintiff refers to Exhibits 1 through 4 in the FAC, these documents are central to Plaintiff's claim, and there is no dispute that these documents are authentic.  *See Hsu v. Puma Biotech., Inc.*, 213 F. Supp. 3d 1275, 1281 (C.D. Cal. 2016) (when ruling on a motion to dismiss, the court "may consider a document that is not attached to the Complaint 'if the complaint 'necessarily relies' on it and '(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy.'") (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).  Exhibits 5 through 7 are matters of public record that are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201.

> The Company's Board of Directors has been aware of matters relating to Jason Galanis including certain claims he had made suggesting an affiliation with members of the Company, its Board, and/or its Executive team.  The Board, acting through its Disinterested Directors, immediately initiated a thorough independent investigation led by Winston & Strawn, and has received regular reports including related to regulatory and governmental communications over the past year.

(FAC ¶ 56; Dkt. 55-4 at 31.)  The press release also stated that "Banc of California and its Disinterested Directors will make further facts publicly available as appropriate."  (FAC ¶ 56.)  On October 19, 2016, Banc filed a Form 8-K with the Securities and Exchange Commission ("SEC"), with a copy of the October 2016 press release attached.  (*Id*. ¶ 57.)  Also on October 19, 2016, Grosvenor reiterated several statements from the October 2016 Press Release on a conference call with investors.  (*Id*. ¶¶ 58–59.)

On October 27, 2016, the Directors formed a Special Committee consisting of Sznewajs, Schnel, Karish, Benett, and Eric Holoman, a former director, to investigate the allegations in the Aurelius Blog.  (*Id*. ¶¶ 61–62, 64–65.)  On October 30, 2016, the Special Committee retained WilmerHale, an outside law firm, to conduct an independent investigation to address certain issues raised by the Aurelius Blog and a letter sent to Banc by KPMG, Banc's independent auditor.  (*Id*. ¶¶ 61, 67.)

Subsequently, on January 23, 2017, Banc issued a press release stating that, "[w]hile certain work remains to be completed, to date WilmerHale's inquiry has not found any violation of law.  In addition, contrary to the claims in the blog post, the inquiry has not found evidence that Jason Galanis has any direct or indirect control or undue influence over the Company," ("January 2017 Press Release").  (*Id*. ¶ 67; Dkt. 55-5 at 32.)  The January 2017 Press Release also stated that the Special Committee had determined that the October 2016 Press Release "contained inaccurate statements," including: (1) the investigation was "not initiated by the Board of Directors," but rather, "by Company management," (2) the October 2016 Press Release "characterized the

investigation as 'independent' without disclosing that the law firm conducting the investigation had previously represented both the Company and the Company's CEO individually," and (3) the statement that "the Board or a group of 'Disinterested Directors' had received 'regular reports including related to regulatory and governmental communications' . . . overstated both the degree to which the Company had been in contact with regulatory agencies about the subject matter referenced in the blog post, as well as the involvement of the directors in oversight or direction of the inquiry." (FAC ¶ 67.) The January 2017 Press Release also disclosed that the SEC had "issued a formal order of investigation directed at certain of the issues that the Special Committee is reviewing," and had served a subpoena on Banc. (*Id.*)

On February 9, 2017, Banc issued another press release announcing WilmerHale's final report to the Special Committee, which "confirmed its earlier conclusion that the inquiry has not found any violation of law." (*Id.* ¶ 70.) The investigation also concluded that "Galanis had no indirect or direct control or undue influence over [Banc]," and that "no loans or related party transactions had impaired the independence of any director." (*Id.*; Dkt. 55-6 at 34.) In this same time period, Sugarman resigned from all positions at Banc, Holoman and Brownstein left Banc, and other senior personnel left or were terminated. (FAC ¶¶ 68, 73–75.)

The FAC also contains allegations from lawsuits filed by several former top Banc executives against Banc, including former Executive Vice Chairman Jeffrey Seabold, Executive Vice President and Chief of Staff Carlos P. Salas, and Managing Director of SBA Lending Heather Endresen. (*Id.* ¶¶ 75–90, 151.) The FAC also references allegations and a declaration by Sugarman in a related "Securities Class Action." (*Id.* ¶¶ 91–100, 151.) Some of these allegations concern Banc's decision in January 2017 to "scale back" its 2016 bonus pool by reducing certain employee bonuses and reversing $7.8 million in such bonus accruals. (*Id.* ¶¶ 104, 107.) Plaintiff alleges this action

improperly credited the accruals towards Banc's earnings for the first quarter of 2017, (*id*.), which had the effect of increasing Banc's pre-tax earnings for the quarter ending on March 31, 2017, (*id*. ¶¶ 113–14).  Banc disclosed this action in its Form 10-Q filed on May 10, 2017, which was signed by Bowers.  (*Id*. ¶¶ 112, 122.)  However, Plaintiff alleges that based on certain Financial Accounting Standards Board ("FASB") guidance, "[i]f based on information available to Banc management on March 1, 2017, management believed it was likely that some or all of the incentive compensation bonuses accrued at December 31, 2016 would not be paid, such amounts should have been reversed as of December 31, 2016, prior to issuance of Banc's 2016 financial statements, rather than being reversed in the financial statements for the quarter ended March 31, 2017."  (*Id*. ¶¶ 116–18.)  Plaintiff alleges this action amounts to an intentional misstatement of Banc's financial statements.  (*Id*. ¶ 120.)  Banc's 2016 Form 10-K was allegedly signed by Lashley, Benett, Karish, Schnel, and Sznewajs.  (*Id*. ¶ 125.)  Endresen alleges that Lashley "was central in making the decision to reassess the bonus accruals."  (*Id*. ¶ 108.)

Plaintiff concedes that he did not make a pre-suit demand on the Board to institute this action.  (*Id*. ¶ 139.)  Instead, he commenced this action and alleges that any pre-suit demand on the directors would have been futile because "[a] majority of the current Board is so personally and directly conflicted or so personally or directly committed to the decisions in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule."  (*Id*. ¶¶ 142–43).  Plaintiff alleges that demand is futile with regards to three decisions made by the Directors: (1) the decision to issue the October 2016 Press Release, permitting Grosvenor to repeat the false statements therein, or the Board's response to that Press Release, (*id*. ¶ 146), (2) the Special Committee's decision not to act in response to Sugarman's request for an investigation into Benett. Schnel, Karish, and Sznewajs's alleged conflicts of interests, (*id*. ¶ 149), and (3) the decision to "manipulate" the earnings in the first quarter of 2017, (*id*. ¶ 148).

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  "If a plaintiff fails to attach to the complaint the documents on which it is based, defendant may also attach to a FRCP 12(b)(6) motion the documents referred to in the complaint."  *Lee v. City of Los Angeles*, 250 F.2d 668, 688-89 (9th Cir. 2001)). The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994*), overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief

that is plausible on its face." *Twombly*, 550 U.S. at 570.  In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations.  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

Federal Rule of Civil Procedure 23.1 sets a heightened pleading standard for shareholder derivative actions, "which requires shareholders who bring derivative suits to 'state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort.'" *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1058 (9th Cir. 2016) (quoting Fed. R. Civ. P. 23.1(b)(3)).  "To comply with Fed. R. Civ. P. 23.1, a plaintiff must plead the futility of demand with specific factual allegations." *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426, 429 (S.D.N.Y. 2005) (citing *Lewis v. Graves*, 701 F.2d 245, 250 (2d Cir. 1983)).  "A plaintiff may not simply rely on conclusory allegations." *Id.* at 429–30 (citation omitted).

## IV.  DISCUSSION

"As a general rule, the business and affairs of a corporation are managed under the direction of its board of directors," and "[s]hareholders are not ordinarily permitted to interfere in the management of the company; they are the owners of the company but not its managers." *Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001).  However, individual shareholders can sue officers, directors, and third parties to enforce causes of action belonging to a corporation through a derivative lawsuit. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991).  Shareholders seeking to file derivative suits must first demand that a corporation's board of directors take action or state with particularity in a complaint why such demand would have been futile.  Fed. R. Civ. P.

23.1; *see In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989–90 (9th Cir. 1999), *superseded by statute on other grounds as recognized in In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017). "Although Rule 23.1 supplies the pleading standard for assessing allegations of demand futility, [t]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief." *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (alteration in original) (quoting *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004)).

Banc is a Maryland corporation, so Maryland law applies. Under Maryland law, derivative plaintiffs must "*make a demand for remedial action* on the corporation prior to filing suit . . . [in order to] proceed with their lawsuit," as "the requirement of a demand, unless lawfully excused, remains fixed as both a substantive and pleading prerequisite." *Werbowsky*, 766 A.2d at 126, 134 (emphasis added).[4] "[I]n most cases, a pre-suit demand on the directors is not an onerous requirement . . .. [I]t gives the directors—even interested, non-independent directors—an opportunity to consider, or reconsider, the issue in dispute." *Id.* at 144. "The Maryland demand requirement is strictly construed," and "frequently leads to the dismissal of derivative actions." *JFURTI, LLC v. Forum Partners Inv. Mgmt., LLC*, No. 16 CIV. 8633 (CM), 2017 WL 1753487, at *8 (S.D.N.Y. Apr. 27, 2017) (collecting cases). "Directors are presumed to act properly and in the best interest of the corporation. They enjoy the benefit and protection of the business judgment rule, and their control of corporate affairs should not be impinged based on non-specific or speculative allegations of wrongdoing." *Werbowsky*, 766 A.2d at 144.

//

---

[4]  The parties do not dispute that demand is required for Plaintiff's three causes of action. *See JFURTI*, 2017 WL 1753487 at *11 ("Maryland law requires shareholder demand prior to bringing derivative claims in the name and right of a Maryland corporation.").

However, the demand requirement may be excused if the plaintiff demonstrates that demand is futile.  Under Maryland law, demand futility is:

> *a very limited exception*, to be applied only when the allegations or evidence *clearly* demonstrate, *in a very particular manner*, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of directors are so personally and directly conflicted or committed to *the decision in dispute* that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

*Werbowsky*, 766 A.2d at 144 (emphasis added).  Plaintiff must demonstrate a director's personal and direct conflict or commitment not to "wrongdoing" generally, but to "the decision in dispute." *See Oliveira v. Sugarman*, 152 A.3d 728, 741 (Md. 2017) ("This exception to the demand requirement is quite narrow and does not encompass every instance in which a majority of the board of directors is interested.  A director that expects to derive a personal benefit from a corporate transaction—and is therefore not disinterested—is not necessarily" sufficient under the *Werbowsky* standard.)  Thus, Plaintiff is required to plead particularized factual allegations specific to each claim and the directors conflicted as to that claim.[5]

The limited scope of this exception "focuses the court's attention on the real, limited, issue—the futility of a pre-suit demand—and avoids injecting into a preliminary proceeding issues that go more to the merits of the complaint—whether there was, in fact,

---

[5]  Plaintiff argues that demand futility analysis "requires consideration of the totality of circumstances pled." (Dkt. 63 [Plaintiff's Opposition, hereinafter "Opp."] at 15–16.)  Specifically, Plaintiff urges this Court to determine whether the factual allegations pled "articulate[] a 'conflict' or 'commitment' to wrongdoing under the Maryland standard" based on his "collective allegations" that demonstrate that six of the nine Banc Directors are conflicted due to a "single alleged course of wrongful conduct." (*Id.* at 16–17.)  Plaintiff's formulation of the Maryland demand futility standard is untethered from the clear dictates of *Werbowsky* that demand futility is "*a very limited exception*, to be applied only when the allegations or evidence *clearly* demonstrate, *in a very particular manner*, . . . [that] a majority of directors are so personally and directly conflicted or committed to *the decision in dispute* . . . ." *Werbowsky*, 766 A.2d at 144.

self-dealing, corporate waste, or a lack of business judgment with respect to the decision or transaction under attack." *Id*.  Under this standard, demand is not excused "simply because a majority of the directors approved or participated in some way in the challenged transaction or decision, or on the basis of generalized or speculative allegations that they are conflicted or are controlled by other conflicted persons, or because they are paid well for their services as directors, were chosen as directors at the behest of controlling stockholders, or would be hostile to the action." *Id*. at 143–44. Maryland's demand futility exception is "unusually exacting." *JFURTI*, 2017 WL 1753487, at *8; *see also In re Infosonics Corp. Derivative Litig.*, No. 06CV1336 BTM(WMC), 2007 WL 2572276, at *7 (S.D. Cal. Sept. 4, 2007) ("Delaware's requirements for demand futility are more permissive than Maryland's.").

The FAC makes clear that Plaintiff did not make the required demand.  (FAC ¶ 139.)  Plaintiff argues that he has met Maryland's demand futility standard because his allegations demonstrate that a majority of Directors were conflicted or committed to each of the three decisions at issue.[6]  (Opp. at 16–25.)  But Plaintiff has failed to "clearly demonstrate, in a very particular manner" that the Directors were "so personally and directly conflicted" that they could not have been reasonably "expected to respond to a demand in good faith." *Werbowsky*, 766 A.2d at 144.[7]  The Court will address each decision in turn.[8]

---

[6]  Although Plaintiff alleges in the FAC that demand is futile because Banc "faces the prospect of irreparable harm absent shareholder action," (FAC ¶ 139), he does not advance this argument in his Opposition, (*see generally* Opp.).

[7]  Plaintiff analogizes his allegations to those in *Felker v. Anderson*, 2005 WL 602974 (W.D. Mo. Feb. 11, 2005).  (Opp. at 22–23.)  In *Felker*, the district court applied the demand futility standard articulated in *Werbowsky* and found that demand was excused.  Specifically, the district court found the plaintiff's allegations that the directors participated in misleading shareholders, failed to ensure that press releases were accurate, and failed to monitor the company were sufficient allegations regarding the directors' conflict or commitment to the decision in dispute.  *Id*. at *3–4.  However, "other federal courts applying Maryland's demand requirements have questioned *Felker's* reasoning and declined to follow it." *Gomes v. Am. Century Cos.*, 710 F.3d 811, 817 (8th Cir. 2013) (concluding that *Seidl* better stated Maryland law on the issue of demand futility); *Seidl*, 713 F. Supp. 2d at 258 n.13 (rejecting *Felker*); *JFURTI*, 2017 WL 1753487, at *10 (same).  Even the case Plaintiff characterizes as approving of *Felker* ultimately

-11-

## A.  October 2016 Press Release

Plaintiff alleges that Benett, Karish, Schnel, and Sznewajs are conflicted regarding the decision to issue the October 2016 Press Release, permitting Grosvenor to repeat the false statements therein, or the Board's response to that Press Release.  (FAC ¶ 146.) Plaintiff alleges that each of these four Directors knew about the false statements regarding the Board's conduct, and as a member of the Board, participated in the release of the October 2016 Press Release, and never retracted or corrected these false statements.  (*Id*. ¶¶ 152–53 [Benett], 158–59 [Sznewajs], 163–64 [Karish], 170–71 [Schnel].)[9]

As an initial matter, Plaintiff alleges that only four Directors were conflicted regarding the October 2016 Press Release.  Thus, Plaintiff has failed to allege that a *majority* of the nine person Board was "so personally and directly conflicted or

---

rejected its reasoning, noting that it "may conflict with the most recent decision by the Maryland Court of Appeals and other courts interpreting Maryland law."  *See Caston v. Hoaglin*, 2009 WL 3078214, at *6–7 (S.D. Ohio Sept. 23, 2009).  This Court also declines to follow *Felker* given the weight of decisions against it.

[8]  Plaintiff makes conclusory allegations about certain Individual Defendants' conflicts of interest, but does not connect these supposed conflicts to any of the decisions disputed in this action.  (FAC ¶¶ 80, 82, 83, 155, 166.)  Because Plaintiff has not connected any of these conflicts to a "decision in dispute," the Court will not address these allegations as it considers whether demand is excused.

[9]  Plaintiff also alleges that each of the Individual Defendants "faces a substantial likelihood of liability for breaching their duties to the Company."  (FAC ¶ 150.)  But whether a director faces a likelihood of liability is irrelevant under Maryland law, as *Werbowsky* instructed that Maryland's demand-futility test "focuses the court's attention on the real, limited, issue—the futility of a pre-suit demand—and avoids injecting into a preliminary proceeding issues that go more to the merits of the complaint," such as liability.  *Werbowsky*, 766 A.2d at 144.  Courts have interpreted this language to reject the application of the "substantial likelihood of liability" test, which is relevant under Delaware law.  *Compare In re Infosonics Corp. Derivative Litig.*, 2007 WL 2572276, at *7 ("[T]he Court does not believe that the 'likelihood of liability' is a proper reason for finding demand on the Board to be futile" because "*Werbowsky* . . . made clear that the issue of futility is discrete and does not go to the merits of the underlying complaint."), *Weinberg*, 838 F. Supp. 2d at 361 ("Whether the directors' actions were the product of valid business judgment, go[es] to the merits of the case, and *Werbowsky* implicitly disallows consideration of the merits of the case in analyzing demand futility"), *with Wood v. Baum*, 953 A.2d 136, 141 n.11 (Del. 2008) (Demand is futile where shareholders show that a majority of directors face a "substantial likelihood of personal liability" for the claims asserted.).

committed to" issuing the October 2016 Press Release or relevant decisions subsequent to that release to meet the demand futility standard.  This fact alone is fatal to Plaintiff's claim that demand is futile.  *Werbowsky*, 766 A.2d at 144 (a derivative plaintiff must "clearly demonstrate" that "a *majority* of directors are so personally and directly conflicted or committed to the decision in dispute . . ..").

In any event, Plaintiff's allegations of "conflict" or "commitment" merely demonstrate these four Directors were members of the Board when Banc issued the October 2016 Press Release.  Demand is not excused "simply because a majority of the directors approved or participated in some way in the challenged transaction or decision." *Werbowsky*, 766 A.2d at 143; *see In re Infosonics Corp. Derivative Litig.*, 2007 WL 2572276, at *8 ("[T]he fact that a majority of the Board participated in the challenged decision does not satisfy Maryland's stringent requirements for demand futility."); *Kautz v. Sugarman*, No. 10 CIV. 3478 RJS, 2011 WL 1330676, at *9 (S.D.N.Y. Mar. 31, 2011), *aff'd*, 456 F. App'x 16 (2d Cir. 2011) (same); *Weinberg ex rel. BioMed Realty Tr., Inc. v. Gold*, 838 F. Supp. 2d 355, 360 (D. Md. 2012) ("Simply being members of the board or the compensation committee and participating in the decision-making do not suffice" to excuse demand.).  Beyond conclusory allegations of participation or approval, Plaintiff pleads no specific information regarding any Director's conduct related to this press release.  Demand is not excused under Maryland law based on a plaintiff's speculation that a majority of the directors approved or participated in some way in the challenged transaction or decision.  *Scalisi*, 380 F.3d at 141 (Demand is not excused under Maryland law when the complaint "provides no specific information relating the directors' conduct to the challenged decision.").[10]

---

[10]  Plaintiff argues that each of these four Directors was a "primary wrongdoer," in the issuance of the October 2016 Press Release.  (Opp. at 18.)  But Plaintiff does not specify any single Director's role in the decision that would make him a "primary wrongdoer."  *Cf. Gorby v. Weiner*, No. CIV.A. TDC-13-3276, 2014 WL 4825962, at *5 (D. Md. Sept. 23, 2014) (the defendant was the "primary wrongdoer"

Plaintiff hypothesizes that these four Directors issued the October 2016 Press Release to deflect allegations regarding their misconduct in the Aurelius Blog, and thus were "committed" to defending their misconduct.  (Opp. at 18.)  But Plaintiff's theory does not amount to a fact from which the Court can infer these Directors are "committed" to defending their alleged misconduct.  Plaintiff's own allegations indicate that Banc ultimately issued a corrective statement in the January 2017 Press Release admitting to the false statements in the October 2016 Press Release, and an outside law firm conducted an investigation that did not find any violation of law.  "'Directors are presumed to act properly and in the best interest of the corporation,' and will not be considered conflicted based on 'non-specific or speculative allegations of wrongdoing.'" *Seidl v. Am. Century Companies, Inc.*, 713 F. Supp. 2d 249, 260 (S.D.N.Y. 2010), *aff'd*, 427 F. App'x 35 (2d Cir. 2011) (quoting *Werbowsky*, 766 A.2d at 144).

### B.  Special Committee

Plaintiff alleges that the Special Committee's decision not to act in response to Sugarman's request for an investigation into Benett, Schnel, Karish, and Sznewajs's alleged conflicts of interests demonstrates that each Director on it was personally and directly conflicted or committed to that decision.  (FAC ¶ 149.)  Specifically, Plaintiff repeats Sugarman's statements from another lawsuit that the Special Committee refused to investigate Benett's conflicts of interest after a presentation he made on December 12, 2016.  (*Id.* ¶¶ 94–96.)  Plaintiff also repeats Sugarman's current allegations regarding Karish, Benett, Schnel, and Sznewajs's conflicts of interest.  (*Id.* ¶ 93.)  Sugarman characterized these conflicts as "potential disclosure, control, and compliance and SOX items associated with" those four directors "and others."  (*Id.* ¶ 92.)  Plaintiff alleges that four Directors–Benett, Sznewajs, Karish, and Schnel–knew about the "flawed Special

---

because he owned half of the company, and because he was conflicted, "his conflict would make it impossible for [the plaintiff] to garner the required majority approval for a derivative suit").

Committee process," and as a member of the Board, participated in that process.  (*Id*. ¶¶ 152, 154 [Benett], 158, 160 [Sznewajs], 163, 165 [Karish], 170, 172 [Schnel].)  Karish and Schnel allegedly demanded that management cease any investigation into Sugarman's allegations of wrongdoing by the Board in December 2016.  (FAC ¶¶ 166, 168, 173.)  Plaintiff further alleges that Bennett, Karish, Schnel, and Sznewajs used the Special Committee to entrench themselves and secure their positions on the Board.  (*Id*. ¶ 147.)

Plaintiff alleges that only four Directors were conflicted regarding the Special Committee's decision, and has failed to allege that a majority of the nine person Board was "so personally and directly conflicted or committed to" not investigating Sugarman's allegations.  Again, this alone is fatal to Plaintiff's claim.

Plaintiff's allegations that these four Directors participated in the Special Committee's decision not to investigate are insufficient to show sufficient conflict or commitment.  *Werbowsky*, 766 A.2d at 143.  And Plaintiff's allegations that these Directors acted to "entrench[] themselves as the remaining directors of [Banc]," and received a "personal benefit" of keeping their positions are similarly insufficient. *Werbowsky* specifically rejected the argument that a director's compensation or "their presumed desire to retain their directorships, which, . . . is dependent on their maintaining good relations with [a controlling shareholder] and senior management" are sufficient to demonstrate a director's inability to act independently.  *Werbowsky*, 766 A.2d at 145; *see Jolly Roger Fund LP v. Sizeler Prop. Inv'rs, Inc.*, No. CIV. RDB 05-841, 2005 WL 2989343, at *7 (D. Md. Nov. 3, 2005) (applying *Werbowsky*, the court rejected the plaintiff's argument that "the Directors were personally conflicted, as they want to keep their positions as directors and officers of the corporation").  And *Werbowsky* also held that the fact a director "would be hostile to the action" does not support an inability to be independent.  *Werbowsky*, 766 A.2d at 143–44.  Thus that the Directors "exhibited

antipathy towards the relief sought," does not suffice to plead that a director was "committed" to the Special Committee decision. *Weinberg*, 838 F. Supp. 2d at 362 (Such allegations "fall[] within the category of 'generalized or speculative allegations' that the directors would be hostile to the action, considered by *Werbowsky* as inadequate to excuse demand.").

### C.  Bonus Decision

Plaintiff alleges that Benett, Karish, Sznewajs, Bowers, and Lashley are conflicted regarding the Board's decision to "manipulate" the earnings in the first quarter of 2017 ("the Bonus Decision").  (FAC ¶ 148.)  Plaintiff alleges that Benett, Karish, Sznewajs, and Lashley knew about the "improper bonus accounting," and as members of the Board and the Audit Committee, participated in and approved of this accounting decision.  (*Id.* ¶¶ 152, 156 [Benett], 158, 161 [Sznewajs], 163, 168 [Karish], 175–76, 178 [Lashley].) Additionally, these four Directors, as well as Schnel and Bowers, signed the 2016 Form 10-K which made the allegedly false and misleading statements at issue.  (*Id.* ¶¶ 157 [Benett], 162 [Sznewajs], 169 [Karish], 174 [Schnel], 177 [Lashley], 179 [Bowers].)

Plaintiff's allegations that six Directors participated in or approved of the Bonus decision are insufficient to show sufficient conflict or commitment. *Werbowsky*, 766 A.2d at 143.  Plaintiff argues that he alleges more than mere participation.  Plaintiff points to his allegations that the Bonus Decision violated specific accounting principles which would have a material impact on Banc's financial results.  (Opp. at 21; FAC ¶¶ 101–27.)  And Plaintiff argues the Court can reasonably infer that the members of the Audit Committee knew about these violations because Endresen alleges that Lashley was "central" to the Bonus Decision.  While Plaintiff attempts to reframe his allegations, they nonetheless amount to mere participation and in making the decision in dispute.  Courts have consistently held that merely signing a false statement does not excuse the demand

requirement. *See In re Infosonics Corp. Derivative Litig.*, 2007 WL 2572276, at *8 ("The futility exception would eviscerate the demand requirement if demand were deemed futile anytime a derivative suit alleged breach of fiduciary duty in connection with the issuance of SEC filings or other financial statements."); *Weinberg*, 838 F. Supp. 2d at 359–62 (the defendant directors' participation in the issuance of allegedly false statements did not excuse demand).[11]

## D.  Bowers

Plaintiff argues that Bowers lacks independence as to all three decisions in dispute. (Opp. at 24–25.)  Specifically, Plaintiff argues that Banc's admission that Bowers is not independent under the NYSE standards is "highly probative of whether that director is capable of considering a demand."  (*Id.*)  But Plaintiff cites no Maryland case law to support this proposition, and Courts applying the more permissive Delaware demand futility standard have rejected Plaintiff's argument.  *See, e.g., Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 61 (Del. Ch. 2015) ("Unlike the NYSE Rules, Delaware law does not contain bright-line tests for determining independence but instead engages in a case-by-case fact specific inquiry based on well-pled factual allegations."); *Sandys v. Pincus*, 152 A.3d 124, 131–33 (Del. 2016) ("[T]he Delaware independence standard is context specific and does not perfectly marry with the standards of the stock

---

[11]  Moreover, Plaintiff's cited cases are distinguishable.  In those cases, the plaintiffs' allegations demonstrated participation and *required oversight or actual knowledge* based on an ongoing scheme of violations, which Plaintiff has not pled.  *See In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1062 (C.D. Cal. May 14, 2008) (alleging that the directors served on committees tasked with oversight that ignored numerous and widespread red flags indicating that the company was deviating from established loan underwriting guidelines); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (the plaintiff made "'extensive and detailed allegations' that the Director Defendants knew of the improper account creation scheme by 2014, and that they made disclosures in SEC filings that they knew were false or misleading as of the time they were made'); *In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 808 (7th Cir. 2003) (the plaintiff alleged "continuing violations of federal regulations over a period of six years" of which the Board received numerous warnings from the FDA, and Board members were tasked with regulatory compliance).

exchange in all cases.").

Plaintiff also argues that by virtue of his position as Banc's CEO, Bowers lacks independence, in that he reports directly to the Board, (FAC ¶¶ 181–83), and Karish and Sznewajs are chairs of Banc's Compensation Committee "along with two non-party directors," who determine Bowers' compensation, (*id*. ¶¶ 184–85). But Plaintiff cites no case law to support this proposition, and courts applying Maryland law have rejected this argument. *See Scalisi*, 380 F.3d at 140 ("Maryland law does not support Plaintiffs' argument that, because the MLF directors were appointed by ML, they had a powerful self-interest not to authorize a suit by MLF against an ML entity for fear they would lose their highly remunerative positions."); *Werbowsky*, 766 A.2d at 129 (rejecting the plaintiffs' argument that "the directors . . . received substantial compensation as board members and . . . had an incentive to appease [the majority shareholder and beneficiary of the challenged transaction] in order to maintain their position on the board"). That directors "are conflicted or are controlled by other conflicted persons, or because they are paid well for their services as directors, were chosen as directors at the behest of controlling stockholders, or would be hostile to the action" are not sufficient allegations under the Maryland demand futility standard. *Id.* at 143–44.

//
//
//
//
//
//
//
//
//

## V.  CONCLUSION

For the foregoing reasons, Banc's motion to dismiss is GRANTED.  The Individual Defendants' motions to dismiss and motion to strike are DENIED as moot.[12] Individual Defendants Bowers, Grosvenor, and Lashley's motion for joinder to the motion to strike is also DENIED as moot.  (Dkt. 59.)  Plaintiff shall have FOURTEEN DAYS' LEAVE TO AMEND to file a Second Amended Complaint.  Plaintiff would be well-advised to consider the arguments presented in the Individual Defendants' motions to dismiss and motion to strike should he file an amended complaint.  "Plaintiffs cannot rely on allegations from other complaints that the Plaintiffs themselves have not investigated.  Lifting allegations from other complaints does not constitute reasonable investigation as required by Fed. R. Civ. P. 11(b)."  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011).


DATED:     June 13, 2018

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[12]  Individual Defendants Bowers, Grosvenor, and Lashley's Request for Judicial Notice in support of their motion to dismiss is also DENIED as moot.  (Dkt. 56-1.)